UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHARLES W. RAMSEY, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1003 (PLF) |
| | ) | |
| UNITED STATES PAROLE COMMISSION, | ) | |
| | ) | |
| Respondent. | ) | |

OPINION

This matter is before the Court on a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 filed by Charles W. Ramsey, Jr. Mr. Ramsey seeks to terminate or, alternatively, to recalculate the terms of his parole. He alleges that the United States Parole Commission has improperly maintained parole authority over him, or that, at the very least, it has improperly calculated his parole term, in violation of a plea agreement reached with the United States Attorney's Office for the District of Columbia and in contravention of a decision of the United States District Court for the Southern District of West Virginia. Upon consideration of the petition, the government's response, and Mr. Ramsey's reply, as well as the relevant legal authorities and the entire record in this case, the Court will deny the petition and dismiss the case.[1]

---

[1]     The petition, response, and reply are referred to by their docket numbers in Civil Action No. 13-1003: Petition ("Pet.") [Dkt. No. 1]; Government's Response ("Resp.") [Dkt. No. 3]; and Petitioner's Reply ("Reply") [Dkt. No. 4].

I. BACKGROUND

On February 14, 1975, Mr. Ramsey was sentenced by a judge of this Court to serve thirty years in prison for importation of cocaine with intent to distribute, to be followed by a six-year special parole term. United States v. Ramsey, Criminal No. 74-623 (D.D.C.). At the same time, he was also sentenced to a two-year term of imprisonment for unlawful possession of a pistol, that sentence to run consecutive to the sentence in the narcotics case. United States v. Ramsey, Criminal No. 74-624 (D.D.C.). The following year, on June 18, 1976, Mr. Ramsey was sentenced by the United States District Court for the Southern District of New York to serve fifteen years in prison for conspiracy to violate the federal narcotics laws, that sentence to run concurrently with the District of Columbia sentences. United States v. Ramsey, Criminal No. 75-1112 (S.D.N.Y.). The Bureau of Prisons combined these three sentences, resulting in an aggregate maximum sentence of thirty-two years, to be followed by a six-year term of special parole. Resp., Dkt. No. 3-3 at 29. On May 14, 1989, Mr. Ramsey was released on parole in all three of these cases to supervision in the District of Columbia with up to 6,484 days remaining to be served in the event of revocation. Id. at 22-31. His term of regular parole was scheduled to terminate on February 13, 2007. Id. at 30; see also Resp., Dkt. No. 3-4.

On November 21, 1995, while on parole, Mr. Ramsey was arrested in the District of Columbia for unlawful possession with intent to distribute 500 grams or more of cocaine. United States v. Ramsey, Criminal No. 95-0326 (D.D.C.). Based on this arrest, the Parole Commission issued a parole violator warrant which was placed as a detainer pending his release from custody in this 1995 case. Pet., Dkt. No. 1-4.[2] After a six-day trial before the undersigned

_____

[2]    A detainer is "a request by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to

2

and a jury, Mr. Ramsey was found guilty of unlawful possession with intent to distribute 500

grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii).  Resp., Dkt.

No. 3-7.  Under the then-mandatory Sentencing Guidelines, he was sentenced by this Court on

December 17, 1997 to 210 months' imprisonment, followed by eight years of supervised release.

Id.  Mr. Ramsey was designated to the Federal Correctional Institution at Beckley ("FCI

Beckley") in Raleigh County, West Virginia.  The parole violator warrant previously issued by

the Parole Commission was placed as a detainer against Mr. Ramsey.  Resp., Dkt. No. 3-6.  On

appeal, the United States Court of Appeals for the District of Columbia Circuit affirmed

Mr. Ramsey's conviction and sentence.  United States v. Ramsey, 165 F.3d 980 (D.C. Cir.

1999).

On August 16, 2000, Mr. Ramsey filed a motion to vacate, set aside, or correct his

sentence from this conviction pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of

counsel in violation of the Sixth Amendment.  United States v. Ramsey, 323 F. Supp. 2d 27, 29

(D.D.C. 2004).  On July 1, 2004, after an evidentiary hearing, this Court found ineffective

assistance of counsel, granted the motion for relief under Section 2255, vacated the conviction

and sentence, and ordered a new trial.  Id. at 44.  The government filed a notice of appeal, but

later withdrew it.  Rather than pursue the appeal or proceed with a new trial, the government

initiated plea discussions with Mr. Ramsey and his new lawyer.  Pursuant to the plea agreement,

dated November 30, 2004 ("2004 Plea Agreement"), Mr. Ramsey agreed to plead guilty to

Count One of the original indictment, charging unlawful possession with intent to distribute 500

grams or more of cocaine.  Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal

─────────────────

notify the agency when release of the prisoner is imminent."  Carchman v. Nash, 473 U.S. 716,
719 (1985).

3

Procedure, the parties agreed on a sentence of "time served" (approximately 109 months), to be

followed by eight years of supervised release.  2004 Plea Agreement ¶ 6 [Exhibit 12 to Dkt.

No. 3 in Civil Action No. 06-0637 (S.D. W. Va.)].[3]

Under the Plea Agreement, Mr. Ramsey also agreed to accept the final version of

the 1996 presentence investigation report that was used by this Court in connection with the

sentence imposed on December 17, 1997, including the offense conduct section, as a factual

basis for his 2004 plea.  2004 Plea Agreement ¶ 3.  The parties agreed not to contest any portion

of the 1996 presentence investigation report at sentencing, on appeal, or in connection with any

post-conviction petition.  Id.  The United States Attorney's Office for the District of Columbia

also agreed not to prosecute Mr. Ramsey "for any other charges arising out of the transaction and

events" that were the subject of the indictment or the guilty plea.  Id. ¶ 5.  Paragraph 6 of the

Plea Agreement stated, in relevant part:

> Since the sentence is to be time served, the parties contemplate that
> the defendant will be processed for release by the U.S. Marshals
> Service in the cell block of the U.S. Courthouse and will be
> released to commence his period of supervised release from there
> without being returned to any other prison facility.

Id. ¶ 6.  In that same paragraph, the Plea Agreement acknowledged Mr. Ramsey's "immediate

eligibility for supervised release."  Id.  On December 15, 2004, the Court accepted Mr. Ramsey's

guilty plea and sentenced him to time served followed by eight years of supervised release under

---

[3]      "An attorney for the government and the defendant's attorney, or the defendant when
proceeding *pro se*, may discuss and reach a plea agreement.  The court must not participate in
these discussions.  If the defendant pleads guilty or nolo contendere to either a charged offense
or a lesser or related offense, the plea agreement may specify that an attorney for the government
will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the
case, or that a particular provision of the Sentencing Guidelines, or policy statement, or
sentencing factor does not apply (such a recommendation or request binds the court once the
court accepts the plea agreement)."  FED. R. CRIM. P. 11(c)(1)(C).

Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  See Resp., Dkt. No. 3-8.

When Mr. Ramsey was released from custody on December 15, 2004 pursuant to

the Plea Agreement, the parole violator warrant was executed and Mr. Ramsey was held as a

parole violator in his 1974 and 1975 District of Columbia and Southern District of New York

cases, Criminal Nos. 74-623 (D.D.C.), 74-624 (D.D.C.), and 75-1112 (S.D.N.Y.).  See Pet., Dkt.

No. 1-7; Resp., Dkt. No. 3-9.  The Parole Commission held a parole revocation hearing on

February 16, 2005 at FCI Beckley, where Mr. Ramsey was incarcerated.  Resp., Dkt. No. 3-10.

The hearing examiner determined that based on his 2004 plea in this case and the acknowledged

factual basis for the plea, it was established that Mr. Ramsey had violated the conditions of his

release in the earlier cases.  Id. at 2.  The hearing examiner also found that Mr. Ramsey's offense

behavior was rated as "Category 8," the highest possible severity, because this offense involved

more than thirty-seven kilograms of cocaine.  Id.  His Salient Factor Score was 2.  Id.  In its

Notice of Action on March 14, 2005, the Parole Commission revoked Mr. Ramsey's parole,

denied credit for the time spent on parole, and set a presumptive reparole date of October 21,

2014.  Resp., Dkt. No. 3-11.  Mr. Ramsey appealed the decision to the Parole Commission's

National Appeals Board, arguing that there were "especially mitigating circumstances" that

justified a more lenient decision, citing his age and good behavior while incarcerated, and the

fact that his offense did not involve acts or threats of violence.  Resp., Dkt. No. 3-12.  The

National Appeals Board reviewed the appeal and affirmed the Parole Commission's decision,

finding that the circumstances Mr. Ramsey raised were not sufficiently mitigating to warrant a

more lenient decision.  Resp., Dkt. No. 3-13.[4]

_____

[4]     Mr. Ramsey also wrote to the Parole Commission on January 4, 2006 to request a new
revocation hearing.  Mr. Ramsey argued that his acceptance of responsibility, acknowledged by

On August 16, 2006, while incarcerated at FCI Beckley in West Virginia, Mr. Ramsey filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 in the United States District Court for the Southern District of West Virginia.  Application for Writ of *Habeas Corpus*, Ramsey v. Felts, Civil Action No. 06-0637 (S.D. W. Va. 2007) [Dkt. No. 2]. Based upon her extensive findings of fact and conclusions of law, the magistrate judge assigned to the case recommended that the court grant Mr. Ramsey's *habeas corpus* petition.  Ramsey v. Felts, Civil Action No. 06-0637, 2007 WL 2310037 (S.D. W. Va. 2007) [Dkt. No. 30].  On August 7, 2007, the district court adopted the findings and recommendation of the magistrate judge and granted Mr. Ramsey's *habeas corpus* petition.  Judgment Order, Ramsey v. Felts, Civil Action No. 06-0637 (S.D. W. Va. 2007) [Dkt. No. 31].  The district court found that the Parole Commission's action — its incarceration of Mr. Ramsey as a parole violator based on his 2004 plea and conviction before this Court in Criminal No. 95-0326 — was unanticipated by the 2004 Plea Agreement and resulted in a failure by the government to honor the terms and intent of the Agreement.  Id.  The court ordered that Mr. Ramsey be immediately released to commence his period of supervised release in the instant case.  Id.

Mr. Ramsey was released from FCI Beckley on August 8, 2007 pursuant to the order of the Southern District of West Virginia to begin his term of supervised release in Criminal No. 95-0326.  Pet., Dkt. No. 1-13.  The Parole Commission then granted Mr. Ramsey parole in Criminal Nos. 74-623 (D.D.C.), 74-624 (D.D.C.), and 75-1112 (S.D.N.Y.) with up to

---

this Court in its Order of November 16, 2005, see Criminal No. 95-0326, Dkt. No. 155, constituted favorable information under the United States Parole Commission Guidelines, 28 C.F.R. § 2.28, to warrant reopening his case for a new parole revocation hearing.  See Resp., Dkt. No. 3-14.  The Parole Commission denied Mr. Ramsey's request, finding that this information would not have affected its previous parole decision.

6

5,519 days remaining to be served in the event of revocation. Resp., Dkt. No. 3-3 at 8-15; Dkt. No. 3-18. According to the Certificate of Parole, Mr. Ramsey was to remain under parole supervision through September 17, 2022. Resp., Dkt. No. 3-19. The Parole Commission's decision was not appealable. Id.

On January 28, 2010, while on supervised release in Criminal No. 95-0326 (D.D.C) and on parole in the earlier cases, Criminal Nos. 74-623 (D.D.C.), 74-624 (D.D.C.), and 75-1112 (S.D.N.Y.), Mr. Ramsey was arrested and charged in the Superior Court of the District of Columbia with maintaining a gambling premises. Resp., Dkt. No. 3-21. On April 26, 2010, he was convicted in a non-jury trial and sentenced by Judge Florence Pan in Superior Court Case No. 2010-CMD-2044 to 45 days' imprisonment. Id. On May 14, 2010, after a hearing, this Court found that Mr. Ramsey had violated the terms of supervised release and therefore revoked his supervised release, but concluded that no further sentence or supervised release should be imposed. Resp., Dkt. No. 3-24.

On May 17, 2010, the Parole Commission issued a parole violator warrant against Mr. Ramsey based on his gambling premises conviction in the Superior Court. Resp., Dkt. No. 3-20. The warrant was executed on June 10, 2010 after Mr. Ramsey's release from imprisonment on the Superior Court sentence. Id. Mr. Ramsey received a parole revocation hearing on September 22, 2010 at the Federal Detention Center in Philadelphia, Pennsylvania, where he was then incarcerated. Resp., Dkt. No. 3-22. The Parole Commission found that Mr. Ramsey had violated the conditions of his parole by engaging in the conduct underlying his conviction for maintaining a gambling premises. It revoked Mr. Ramsey's parole in Criminal Nos. 74-623 (D.D.C.), 74-624 (D.D.C.), and 75-1112 (S.D.N.Y.), forfeited the time he had spent on parole since his release from FCI Beckley in 2007, and set a reparole date of April 21, 2011

7

after service of an additional twelve months in prison, with up to 5,519 days remaining to be

served in the event of a further parole violation. Resp., Dkt. No. 3-23. The Salient Factor Score

was 2. Id. The Parole Commission's Notice of Action indicated that the decision was

appealable, id., but Mr. Ramsey did not appeal. Mr. Ramsey served this twelve-month sentence

for violating parole at Rivers Correctional Institution ("CI Rivers") in Winton, North Carolina.

Mr. Ramsey was released on parole on April 21, 2011; he is to remain under parole supervision

until July 16, 2025. See Resp., Dkt. No. 3-25.

On November 5, 2010, while incarcerated at CI Rivers in North Carolina,

Mr. Ramsey filed a motion in the United States District Court for the Southern District of West

Virginia seeking to enforce that court's August 7, 2007 order. Motion, Ramsey v. Felts, Civil

Action No. 06-0637 (S.D. W. Va. 2007) [Dkt. No. 34]. He argued that his continued

incarceration at CI Rivers on a parole violation determination breached the terms of the 2004

Plea Agreement in this Court and the 2007 West Virginia order requiring his immediate release

to a term of supervised release. Id. Mr. Ramsey requested that the federal court in West

Virginia find that his parole terminated on December 14, 2004 as a result of the plea agreement

or, in the alternative, on August 7, 2007, the date of the decision from the Southern District of

West Virginia. Memorandum at 1-2, Ramsey v. Felts, Civil Action No. 06-0637 (S.D. W. Va.

2007) [Dkt. No. 35].

On December 7, 2010, the United States District Court for the Southern District

of West Virginia construed Mr. Ramsey's motion to enforce the Plea Agreement and the 2007

order as another petition for *habeas corpus* relief under Section 2241 because "the motion

attacks the execution of the petitioner's sentence." Order, Ramsey v. Felts, Civil Action

No. 06-0637 (S.D. W. Va. 2007) [Dkt. No. 39]. While noting that Mr. Ramsey's claim "may

have some merit," the court ordered that the matter be transferred to the United States District Court for the Eastern District of North Carolina, which had jurisdiction over Mr. Ramsey's custodian, the warden of CI Rivers.  Id.  On December 20, 2010, Mr. Ramsey filed a motion requesting that the court vacate its transfer order and retain jurisdiction over the case.  Motion, Ramsey v. Felts, Civil Action No. 06-0637 (S.D. W. Va. 2007) [Dkt. No. 40].  On August 26, 2011, the West Virginia court denied Mr. Ramsey's motion, citing the reasons set forth in its December 7, 2010 order.  Order, Ramsey v. Felts, Civil Action No. 06-0637 (S.D. W. Va. 2007) [Dkt. No. 45].

On January 26, 2011, Mr. Ramsey was transferred from CI Rivers in North Carolina to a halfway house in Washington, D.C.  Letter, Ramsey v. Felts, Civil Action No. 06-0637 (S.D. W. Va. 2007) [Dkt. No. 43].  On May 31, 2011, the United States District Court for the Eastern District of North Carolina directed Mr. Ramsey to show cause as to why the action before it should not be dismissed for failure to prosecute.  Order, Ramsey v. Felts, Civil Action No. 10-2261 (E.D.N.C. 2010) [Dkt. No. 11].  On June 24, 2011, the federal court in North Carolina dismissed the action without prejudice, citing Mr. Ramsey's failure to respond to the order to show cause.  Order, Ramsey v. Felts, Civil Action No. 10-2261 (E.D.N.C. 2010) [Dkt. No. 13].  Mr. Ramsey is currently on parole under the supervision of the United States Probation Office for the District of Columbia.  Resp., Dkt. No. 3 at 2 n.1.  On October 4, 2011, Mr. Ramsey, through counsel, filed a motion in this Court to amend or correct his sentence pursuant to 28 U.S.C. § 2241.  Pet., Dkt. No. 1.

## II.  LEGAL STANDARDS

Mr. Ramsey's petition for a writ of *habeas corpus* pursuant to Section 2241 is properly brought in this Court.  Section 2241 provides that "writs of *habeas corpus* may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a).  The statute also requires that the petitioner be "in custody" in order to file the writ.  28 U.S.C. § 2241(c).  A petitioner who is on parole is in government custody for the purposes of seeking *habeas corpus* relief.  See Jones v. Cunningham, 371 U.S. 236, 242-43 (1963) (parole significantly confines parolee's freedom, keeping parolee in custody within the meaning of the *habeas corpus* statute); see also Doganiere v. United States, 914 F.2d 165, 169-70 (9th Cir. 1990) (proper way to seek review of Parole Commission's decision is by petition for writ of *habeas corpus* under Section 2241 addressed to district court with jurisdiction over petitioner or petitioner's custodian); Blau v. United States, 566 F.2d 526, 527-28 (5th Cir. 1978) (petition for *habeas corpus* under Section 2241 is proper vehicle to review Parole Commission decision).

As a parolee subject to the conditions of parole until 2025, Mr. Ramsey is "in custody" within the meaning of the statute.  Furthermore, Mr. Ramsey is subject to the authority of the United States Parole Commission, and is directly supervised by the United States Probation Office for the District of Columbia.  See 18 U.S.C. § 4203(b)(4) (empowering Parole Commission to request that probation officers perform direct supervision of federal parolees).  Therefore, this Court can properly consider Mr. Ramsey's petition.  See 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); see also Guerra v. Meese, 786 F.2d 414, 417 (D.C. Cir. 1986) (once paroled, Parole

10

Commission may be a petitioner's custodian because it then has control over him); <u>Owens v. Gaines</u>, 219 F. Supp. 2d 94, 98 (D.D.C. 2002) (same).

On a petition for a writ of *habeas corpus*, judicial review of the Parole Commission's decision to revoke parole, and all related decisions, is limited to determining whether there was an "abuse of discretion" by the Parole Commission, or, in other words, whether there was a "rational basis" in the record to support such a determination by the Parole Commission. <u>Allston v. Gaines</u>, 158 F. Supp. 2d 76, 79 (D.D.C. 2001) (citing <u>Gambino v. E.W. Morris</u>, 134 F.3d 156, 159-60 (3d Cir. 1998)). In order to overturn a decision of the Parole Commission, this Court must find that the Parole Commission's decisions were "either so lacking in evidentiary support or [were] so irrational as to be fundamentally unfair." <u>Ash v. Reilly</u>, 431 F.3d 826, 830 (D.C. Cir. 2005); <u>accord</u> <u>Crawford v. Jackson</u>, 323 F.3d 123, 129 (D.C. Cir. 2003). In his petition for *habeas corpus*, Mr. Ramsey argues that the Parole Commission's decision to maintain parole authority over him, as well as its decisions regarding the calculation of his present term of parole, should be overturned because they conflict with the terms of the 2004 Plea Agreement and with the order issued by the United States District Court for the Southern District of West Virginia. Resolving the merits of Mr. Ramsey's petition, therefore, requires this Court to measure the Parole Commission's actions against the terms of both the Plea Agreement and the West Virginia court's order interpreting the Agreement.

## III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

The government first requests that the Court deny the petition for failure to exhaust administrative remedies, Resp., Dkt. No. 3 at 8-10, arguing that "a person seeking judicial review of agency action must first have exhausted available administrative appeals

within the agency." Id. at 8-9.  The doctrine of exhaustion of administrative remedies "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." McCarthy v. Madigan, 503 U.S. 140, 145 (1992).  The doctrine generally applies to *habeas corpus* petitions challenging parole determinations.  See, e.g., Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004) (per curiam) (exhaustion of administrative remedies prerequisite to filing for *habeas corpus* relief in parole matters under 28 U.S.C. § 2241).  Because Mr. Ramsey did not appeal the Parole Commission's 2010 revocation decision to its National Appeals Board, and did not challenge the underlying basis for the March 2005 revocation order — instead, appealing that decision only to argue for a more lenient sentence, see supra at 5 — the government maintains that the exhaustion of administrative remedies doctrine precludes judicial review.

The exhaustion of administrative remedies doctrine is subject to numerous exceptions, McKart v. United States, 395 U.S. 185, 193 (1969), and courts have discretion to excuse the non-jurisdictional exhaustion requirement where the litigant's interest in an immediate judicial decision outweighs the institutional interests underlying the exhaustion requirement.  Ass'n of Flight Attendants-CWA v. Chao, 493 F.3d 155, 159 (D.C. Cir. 2007). Exhaustion may be excused if delaying judicial review would cause irreparable injury or if the disputed issue is outside the agency's expertise and the litigant's interest in immediate judicial review outweighs the "government's interests in efficiency and administrative autonomy that the exhaustion doctrine is designed to further." Avocados Plus Inc. v. Veneman, 370 F.3d 1243, 1247 (D.C. Cir. 2004) (citing West v. Bergland, 611 F.2d 710, 715 (8th Cir. 1979)).  This is such a case.

Resolution of this *habeas corpus* petition requires the Court to interpret the 2007 decision of the United States District Court for the Southern District of West Virginia and the 2004 Plea Agreement approved by this Court. Interpreting the disputed terms of a federal court judgment and/or a court-approved plea agreement is not within the administrative expertise of the Parole Commission. See Ramon-Sepulveda v. INS, 824 F.2d 749, 751 (9th Cir. 1987) (court has authority to preserve effectiveness of its earlier judgment without first requiring exhaustion of administrative remedies); Marshall v. Local Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Inc., 593 F.2d 1297, 1302 (D.C. Cir. 1979) ("The power of a federal court to protect and enforce its judgments is unquestioned."). Requiring exhaustion could not serve either to protect the Parole Commission's authority or to promote judicial efficiency. See McCarthy v. Madigan, 503 U.S. at 145; Avocados Plus v. Veneman, 370 F.3d at 1247. The exhaustion requirement therefore does not preclude judicial review of Mr. Ramsey's claims for relief.

## IV. DISCUSSION

### A. Terms of the 2004 Plea Agreement and Their Interpretation in the Southern District of West Virginia

As noted, the 2004 Plea Agreement was entered into pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Under that Rule, the parties agreed to a particular sentence which the Court expressly approved at the time of the plea: "time served, (approximately 109 months) to be followed by eight years of supervised release. . . . [T]he [previous] sentence of 210 months will be vacated and a sentence of time served will be imposed with credit since November 21, 1995." 2004 Plea Agreement ¶ 6. The parties further stipulated

13

in paragraph 6 of the Plea Agreement that Mr. Ramsey would be released from the courthouse

on the day of the plea to commence his period of supervised release "without being returned to

any other prison facility"; and it expressly acknowledged Mr. Ramsey's "immediate eligibility

for supervised release." Id.[5]  The Court accepted Mr. Ramsey's plea on December 14, 2004,

expressly approving the terms of the Plea Agreement, and sentenced him that same day.

       Paragraph 6 of the 2004 Plea Agreement contained promises that were binding

not only on the United States Attorney's Office for the District of Columbia.  By stating that Mr.

Ramsey would be released immediately to begin his period of supervised release without being

returned to prison, the Agreement implicated the U.S. Marshals Service and the U.S. Parole

---

[5]      Paragraph 6 of the Plea Agreement, in pertinent part, reads as follows:

> If the Court accepts the terms and conditions of this plea agreement,
> and if the defendant completes the required plea colloquy in open
> court, the court will proceed immediately to sentencing without any
> additional delay. . . .  The sentence imposed will be time served,
> (approximately 109 months) to be followed by eight years of
> supervised release.  No other aspect of the sentence will be changed
> except the sentence of 210 months will be vacated and a sentence of
> time served will be imposed with credit since November 21, 1995.
> Since the sentence is to be time served, the parties contemplate that
> the defendant will be processed for release by the U.S. Marshals
> Service in the cell block of the U.S. Courthouse and will be released
> to commence his period of supervised release from there without
> being returned to any other prison facility.  Ordinarily, the court is
> not bound to impose any particular sentence when the parties reach
> a plea agreement.  In this agreement however, the parties intend to
> invoke the rarely used provisions of Federal Rule of Criminal
> Procedure 11(c)(1)(C), which binds the court to impose a particular
> sentence upon acceptance of the guilty plea. . . .  [S]uch an agreement
> preserves the conviction, ends further litigation in this matter
> including appellate litigation, and in exchange, results in your client's
> immediate eligibility for supervised release.

2004 Plea Agreement ¶ 6.

Commission, which has the authority to incarcerate parole violators.[6]  Whether the Plea

Agreement was improvidently or purposely written without anticipating the possible intervention

of the Parole Commission is irrelevant.  The United States Attorney's Office made a

representation to Mr. Ramsey that was central to the Plea Agreement — namely, that he would

be released immediately without being returned to prison.  As Mr. Ramsey saw it, the

government of the United States made an explicit representation that he would be released

immediately, and this representation was part of the inducement or consideration for Mr.

Ramsey's acceptance of the plea offer.  It was reasonable for Mr. Ramsey to understand that the

representation bound the government and to rely on this promise.  Pursuant to the terms of the

Agreement, then, Mr. Ramsey was entitled to immediate release to commence his term of

supervised release in Criminal No. 95-0326 without returning to prison.

      Despite the terms of the 2004 Plea Agreement, Mr. Ramsey was held as a parole

violator upon his release and returned to prison because the Parole Commission found that his

conviction upon this plea constituted a violation of the terms of his parole in the 1974 District of

Columbia cases and the 1975 Southern District of New York case, Criminal Nos. 74-623

(D.D.C.), 74-624 (D.D.C.), and 75-1112 (S.D.N.Y.).  Believing that he had not gotten the benefit

of his bargain as reflected in the 2004 plea entered before this Court, Mr. Ramsey filed a *habeas*

*corpus* petition *pro se* against the Warden of FCI Beckley in West Virginia, where he was

incarcerated, and against the Chairman of the Parole Commission.

---

[6]     Paragraph 5 of the Plea Agreement, by contrast, promised only that the United States
Attorney's Office for the District of Columbia would not further prosecute Mr. Ramsey; it did
not purport to bind the Parole Commission or any other entity of the Department of Justice.  It
reads: "The United States Attorney's Office for the District of Columbia will not prosecute your
client for any charges arising out of the transactions and events that are the subject of the
indictment and this guilty plea."  2004 Plea Agreement ¶ 5.

The United States District Court for the Southern District of West Virginia

granted the *habeas corpus* petition and ordered petitioner's immediate release from custody to

commence his term of supervised release in the case before this Court, Criminal No. 95-0326.

The magistrate judge, in her opinion, rejected four of Mr. Ramsey's five grounds for *habeas*

*corpus* relief but granted the last claim, finding that the Parole Commission's intervention

prevented the promises of the 2004 Plea Agreement from being fulfilled. Ramsey v. Felts, 2007

WL 2310037, at *10. Drawing on the Supreme Court's decision in Santobello v. New York,

404 U.S. 257 (1971), and cases from the Fourth Circuit applying Santobello, the magistrate

judge recommended that the District Court order specific performance of the bargain

contemplated by the parties in the 2004 Plea Agreement. Ramsey v. Felts, 2007 WL 2310037,

at *6-12.[7] The magistrate judge concluded that while the government had received all of the

benefits of its bargain, Mr. Ramsey had not. Id. at *10-11. The court found that Mr. Ramsey

had relied on the government's promise that he would be immediately released to commence his

---

[7]      In Santobello, the Supreme Court held that allowing the government to renege on
promises made in plea agreements would undermine the institutional, contractual, and
constitutional principles governing plea agreements. Santobello v. New York, 404 U.S. 257, 262
(1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the
prosecutor, so that it can be said to be part of the inducement or consideration, such promise
must be fulfilled."); see also Mabry v. Johnson, 467 U.S. 504, 509 (1984) ("[W]hen the
prosecution breaches its promise with respect to an executed plea agreement, the defendant
pleads guilty on a false premise, and hence his conviction cannot stand . . . ."); United States v.
Jones, 56 F.3d 688, 691 (D.C. Cir. 1995) (same); United States v. Peglera, 33 F.3d 412, 414 (4th
Cir. 1994) ("Because a government that lives up to its commitments is the essence of liberty
under law, the harm generated by allowing the government to forego its plea bargain obligations
is one which cannot be tolerated."); United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir.
1992) (question is what was reasonably understood by defendant when he entered plea and
whether he was induced by the offer); United States v. Carter, 454 F.2d 426, 428 (4th Cir. 1972)
(plea agreements implicate the "honor of government, public confidence in the fair
administration of justice, and the effective administration of justice in a federal scheme of
government").

term of supervised release. <u>Id</u>. Instead of immediate release, however, Ramsey was imprisoned for violating the terms of his parole. The purpose of the Plea Agreement therefore had been frustrated and its terms had not been fulfilled. <u>Id</u>.[8]

On the recommendation of the magistrate judge, the District Court granted Mr. Ramsey's *habeas corpus* petition. Judgment Order, <u>Ramsey v. Felts</u>, Civil Action No. 06-0637 (S.D. W. Va. 2007) [Dkt. No. 31].[9]

Among the District Court judge's specific findings were the following:

1.  Mr. Ramsey's decision to plead guilty rested to a significant degree on a promise or agreement of the prosecutor that he would be sentenced to time served and would be immediately released to begin service of his term of supervised release;

2.  While Ramsey was sentenced to time served, the prosecutor's promise was not fulfilled because he was not immediately released;

3.  The government is held to a higher degree of responsibility than Ramsey for any imprecision or ambiguity in the plea agreement, in part because the government drafted the agreement;

4.  The plea agreement is ambiguous as a matter of law because it purported to bind only the United States Attorney's Office, but it made representations and promises affecting other agencies within the U.S.

---

[8]    Relying on <u>Santobello</u> and Fourth Circuit case law, the court construed any ambiguities in the Agreement against the government. <u>Ramsey v. Felts</u>, 2007 WL 2310037, at *9-11 (discussing <u>United States v. Jureidini</u>, 846 F.2d 964 (4th Cir. 1988); <u>United States v. Harvey</u>, 791 F.2d 294 (4th Cir. 1986); and <u>United States v. Carter</u>, 454 F.2d 426 (4th Cir. 1992)); <u>see also</u> <u>United States v. Harvey</u>, 791 F.2d at 300 ("[C]onstitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in plea agreements.").

[9]    The District Court for the Southern District of West Virginia adopted in full the procedural history, legal analysis, proposed findings, and recommendation of the magistrate judge assigned to the case. <u>See</u> Judgment Order, <u>Ramsey v. Felts</u>, Civil Action No. 06-0637 (S.D. W. Va. 2007) [Dkt. No. 31].

Department of Justice on which representations and promises Ramsey, his counsel, and the District Court in the District of Columbia relied;

5.   The Parole Commission's action was unanticipated by the plea agreement and resulted in the purpose of the plea agreement not being fulfilled;

6.   It is the Court's duty to ensure that the bargain represented by the plea agreement is not frustrated.

Judgment Order, Ramsey v. Felts, Civil Action No. 06-0637 (S.D. W. Va. 2007) [Dkt. No. 31] at

2-3.  In ordering specific performance of the Plea Agreement, the West Virginia court required

Mr. Ramsey's "immediate release to commence his period of supervised release." Id. at 3.

Accordingly, the warden released Mr. Ramsey from custody at FCI Beckley to commence his

term of supervised release.  The Parole Commission thereupon granted Mr. Ramsey parole in

Criminal Nos. 74-623 (D.D.C.), 74-624 (D.D.C.), and 75-1112 (S.D.N.Y.) with 5,519 days

remaining to be served if ever his parole should be revoked.  Resp., Dkt. No. 3-3 at 8-15.

### B. Mr. Ramsey's Present Petition for Habeas Corpus

#### 1. Mr. Ramsey's Request for Termination of His Parole

In Mr. Ramsey's current Section 2241 habeas corpus petition, he argues that the

District Court in West Virginia ordered the government to release him "on supervised release

and only supervised release" — not on parole. Pet., Dkt. No. 1 at 10.  He maintains that, in

authorizing and specifying only supervised release, the West Virginia court implicitly terminated

the terms of his parole from the 1970s cases and that the Parole Commission therefore lacked the

authority to release him on parole. Id.; see also Reply, Dkt. No. 4 at 5-6.  And it follows,

according to Mr. Ramsey, that if his parole was terminated in 2007 it therefore could not be

18

revoked in 2010, when the Parole Commission did so, resulting in the extension of his parole term to its present expiration date of July 1, 2025.  See Pet., Dkt. No. 1 at 10.

The government responds that the 2007 West Virginia court order required that Mr. Ramsey be released immediately on supervised release in Criminal No. 95-0326, but that it did not terminate his parole in Criminal Nos. 74-623 (D.D.C.), 74-624 (D.D.C.), and 75-1112 (S.D.N.Y.), either explicitly or implicitly.  Resp., Dkt. No. 3 at 13-14.  Under the government's interpretation, the court in West Virginia held only that, because of the 2004 Plea Agreement before this Court, the Parole Commission could not impose any further term of imprisonment for violating parole based directly on Mr. Ramsey's conviction in Criminal No. 95-0326.  The Court agrees with the government's interpretation of the 2007 West Virginia decision:  the order of the District Court in West Virginia required Mr. Ramsey's immediate release to commence supervised release in Criminal No. 95-0326, prohibiting his further incarceration as a parole violator based on the conviction in that case, but it did not terminate the terms of his parole from the 1970s cases.

Termination of Mr. Ramsey's parole in the three earlier criminal cases is not apparent from the West Virginia court's judgment.  Ramsey's criminal cases from the 1970s were not the subject of the 2004 Plea Agreement, as those cases had already been adjudicated, nor were they even referenced in the Plea Agreement.  All references to "case" or "matter" in the Plea Agreement pertained to Criminal No. 95-0326.  Except for the provision that Ramsey "will be released to commence his period of supervised release [from the cell block of the U.S. Courthouse] without being returned to any other prison facility," 2004 Plea Agreement ¶ 6, the U.S. Attorney's Office made no promises or representations affecting Mr. Ramsey's custody.

19

The Parole Commission therefore appropriately maintained its parole authority over Mr. Ramsey upon his release from prison in 2007.  And, as a further consequence, the Parole Commission's 2010 revocation of Ramsey's parole was not done in error.  This 2010 violation was based on a wholly separate and subsequent criminal conviction, not on his conviction in Criminal No. 95-0326.  As the government correctly states, neither the 2004 Plea Agreement nor the West Virginia court's decision gave Mr. Ramsey license to commit new crimes without risking parole revocation and being sentenced to serve his back-up time.  Resp. at 13 ("His plea agreement [in Criminal No. 95-0326] and [the] 2007 decision in [the] Southern District of West Virginia did not give [Mr. Ramsey] carte blanche to commit future crimes with no consequences.").  Thus, when Mr. Ramsey was convicted in 2010 in the Superior Court of the District of Columbia for maintaining a gambling premises, the Parole Commission had authority to revoke his parole, reincarcerate him, and recalculate his back-up time.  Id.

To reiterate, terminating Mr. Ramsey's parole was not part of the original bargain contemplated by the 2004 Plea Agreement, nor was it mandated by the judgment of the Southern District of West Virginia.  The court held only that, because of the promises made to Ramsey in the 2004 Plea Agreement, the Parole Commission could not require Mr. Ramsey to serve additional prison time as a parole violator based directly on his conviction in Criminal No. 95-0326.  Indeed, as the magistrate judge in West Virginia noted, "it appears that the parties [to the 2004 Plea Agreement] and the court never gave the Parole Commission a thought" at the time of the plea.  Ramsey v. Felts, 2007 WL 2310037, at *11.  Because terminating Mr. Ramsey's parole from his previous convictions was not part of the 2004 plea bargain, Santobello did not compel the West Virginia federal court or this Court to order such an action.

As a result, the Court concludes that when Mr. Ramsey was released in 2007 to commence

supervised release in Criminal Action No. 95-0326, the Parole Commission had not been

divested of its authority to reinstate Mr. Ramsey on parole in Criminal Nos. 74-623 (D.D.C.),

74-624 (D.D.C.), and 75-1112 (S.D.N.Y.).  Consequently, the Court will not grant Mr. Ramsey's

request for a declaration that his parole is or has been terminated.

### 2.  Mr. Ramsey's Request for Recalculation of His Parole

In Mr. Ramsey's alternative claim for relief, he seeks an order directing the

Parole Commission to recalculate the terms of his parole in view of two considerations that, he

maintains, this Court should accept as fact.  First, Ramsey argues that in 2010, when he was

convicted in the Superior Court of maintaining a gambling premises, he was at that time no

longer on regular parole but, rather, was then serving his sentence of special parole.  Pet., Dkt.

No. 1 at 11.[10]  Second, Ramsey contends that the Parole Commission erred when it took account

of his conviction in the 1995 case when calculating his Salient Factor Score.  Id. at 8-11.

With respect to Mr. Ramsey's first argument, it is not clear what relevance there

is to the contention that his 2010 gambling conviction occurred while he was on special parole

rather than on regular parole.  Ramsey himself seems to suggest that the law is unclear regarding

what impact such a difference might have on the recalculation of his parole conditions going

---

[10]      Recall that Mr. Ramsey was sentenced in the 1970s to a term of thirty-two years in prison, followed by a six year term of special parole.  See supra at 2.  "Special parole is a statutory creation that was used in sentencing up until the late 1980s.  Unlike regular (or traditional) parole, whereby the Parole Commission releases an individual into the community before the end of his term of imprisonment, special parole was imposed by the district court at sentencing and followed the term of imprisonment.  Special parole was eventually replaced by supervised release, a similar mechanism that is administered by the courts."  Manso v. Fed. Detention Ctr., Miami, 182 F.3d 814, 816 (11th Cir. 1999).

forward.  See Pet., Dkt. No. 1 at 11 n.4.  Even if one were to assume, however, that this

difference would benefit him in some way, Mr. Ramsey's argument must be rejected because it

rests on a flawed understanding of the 2004 Plea Agreement and the decision rendered by the

District Court in West Virginia.

Mr. Ramsey's argument runs as follows:  He contends that by virtue of the 2004

Plea Agreement and the West Virginia court's order interpreting that Agreement, the Parole

Commission's March 2005 revocation order "had no legal effect."  Pet., Dkt. No. 1 at 10.  In this

revocation order, the Parole Commission not only ordered that Ramsey be returned to prison —

an order that conflicted with the terms of the 2004 Plea Agreement, see supra at 14-18 — but the

Commission also denied him credit for his street time while on parole.  See Resp., Dkt. No. 3-11.

Ramsey argues that because this order was, in his view, a legal nullity, the Parole Commission's

denial of street time credit likewise had no legal effect.  See Pet., Dkt. No. 1 at 10-11.  And

according to Ramsey, this entails that his term of regular parole actually expired in February

2007, meaning that in 2010 — when he was arrested and convicted for maintaining a gambling

premises — he was three years into his six-year sentence of the special parole imposed at the

time of his 1970s convictions.  See id.

Ramsey offers two alternative theories for finding that the Parole Commission's

March 2005 revocation order bore no legal effect, and that the denial of street time credit

therefore was invalid.  First, he contends that under paragraph 6 of the 2004 Plea Agreement and

the West Virginia court's interpretation of that paragraph, the Parole Commission lacked any

authority to revoke his parole in 2005.  As the Court already has explained, while paragraph 6

did indeed preclude the Commission from reincarcerating Ramsey as a parole violator on the

basis of the 2004 plea, it does not follow that the Parole Commission's 2005 actions with respect

to Ramsey's parole were null *in toto*. Because Mr. Ramsey was convicted in 2004 upon his plea

to one count of possession with the intent to distribute more than 500 grams of cocaine, the

Commission had the authority to forfeit his street time under the applicable statutes, regulations,

and case law. Indeed, by law street time may be forfeited for possession of a controlled

substance, see 18 U.S.C. § 4214(f), or for committing a crime punishable by a term of

imprisonment while on parole, 18 U.S.C. § 4210(b)(2). See Uptain v. Halt, No. 2:06-CV-1051-

WKW (WO), 2009 WL 497504, at *4 (M.D. Ala. Feb. 26, 2009); Schmanke v. Hemingway,

No. 02-CV-40028-FL, 2002 WL 34230308, at *5 (E.D. Mich. Sept. 30, 2002); Simmons v. U.S.

Parole Comm'n, 590 F. Supp. 1221, 1222 (D.D.C. 1984). In 2004, Mr. Ramsey was convicted

in Criminal No. 95-0326 of a controlled substances offense, and the conviction was punishable

by a term of imprisonment.[11] Accordingly, the Parole Commission properly denied him credit

for street time on the basis of this 2004 conviction — even though paragraph 6 of the Plea

Agreement forbade the Commission from reincarcerating Ramsey based on that conviction.

Mr. Ramsey's second theory for finding that the Parole Commission's street time

decision was invalid rests on paragraph 5 of the Plea Agreement. See Pet., Dkt. No. 1 at 10-11.

Paragraph 5 provided as follows: "The United States Attorney's Office for the District of

Columbia will not prosecute your client for any other charges arising out of the transactions and

---

[11]    Whether or not Mr. Ramsey was actually imprisoned as a result is irrelevant. See
18 U.S.C. § 4210(b)(2) (if convicted of a crime "punishable" — not punished — "by a term of
imprisonment" while on parole). But in fact he was imprisoned by this Court. The Court
sentenced him to a term of imprisonment of approximately 109 months, the time he had already
served for commission of this offense. See Judgment (Dec. 17, 2004), Resp., Dkt. No. 3-8 ("The
defendant is hereby committed to the custody of the United States Bureau of Prisons to be
imprisoned for a term of TIME SERVED.").

events that are the subject of the indictment and this guilty plea." 2004 Plea Agreement ¶ 5. Under Mr. Ramsey's reading of that paragraph and his understanding of the West Virginia court's decision, the Parole Commission "had no authority to revoke parole based on the same facts for which Mr. Ramsey was convicted in the 1995 case." Pet., Dkt. No. 1 at 11. Consequently, Ramsey argues, the 2005 revocation order was a legal nullity and, therefore, so was the Commission's decision to deny him street time credit.

This argument rests on the premise, advanced by Mr. Ramsey, that the Parole Commission was bound by the terms of the 2004 Plea Agreement "to the same extent as the United States Attorney's Office": since the U.S. Attorney's Office was prohibited from "prosecuting" Mr. Ramsey based on his conviction in the 1995 case, so was the Parole Commission. Pet., Dkt. No. 1 at 9. But it is clear from the terms of the Plea Agreement that the Parole Commission was not bound by the terms of the Agreement to the same extent as was the U.S. Attorney's Office for the District of Columbia. Paragraph 5 of the 2004 Plea Agreement specifically bound the U.S. Attorney's Office for the District of Columbia — but no other entity — not to further prosecute Mr. Ramsey based on his conviction in Criminal No. 95-0326. 2004 Plea Agreement ¶ 5. Paragraph 5 did not bind the Parole Commission. Consequently, the Parole Commission was not precluded by that paragraph from taking into account Mr. Ramsey's 2004 conviction with respect to decisions made regarding street time credit. Likewise, paragraph 5 did not bar the Parole Commission from taking the 2004 conviction into account when calculating Mr. Ramsey's Salient Factor Score. For this reason, the Court also rejects Mr. Ramsey's request that his case be returned to the Commission for recalculation of that score.

## V.  CONCLUSION

For the foregoing reasons, Mr. Ramsey's petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 is denied.  A separate Order consistent with this Opinion will be issued this same day.[12]

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE:  March 4, 2015                                United States District Judge

---

[12]        Mr. Ramsey also seeks correction of the judgment in this case, entered on December 17, 2004, to state that he was convicted of an offense involving cocaine powder, not cocaine base or crack.  See Pet. at 1, 12.  The government has no objection to this request, Resp. at 1-2, and the Court agrees that the December 17, 2004 judgment clearly is in error.  The Court therefore will direct the Clerk of the Court to enter an amended judgment to this effect.